UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MED-ASIA SHIPPING LIMITED

      Plaintiff,

                                                     07 CIV 6258 (LTS) (AJP)

OCEANIC BRIDGE INTERNATIONAL,
INC., d/b/a OCEANIC BRIDGE INTL, INC.
DALIAN BRANCH, a/k/a DALIAN
OCEANICBRIDGE INTERNATIONAL
FORWARDING CO., LTD.,

      Defendants,

-----------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT OCEANIC BRIDGE INTERNATIONAL INC.'S
<u>MOTION TO VACATE MARITIME ATTACHMENT AND DISMISS COMPLAINT</u>**


                                                              Law Offices of
                                                              Richard A. Zimmerman, Esq.
                                                              233 Broadway, Suite 2202
                                                              New York, New York 10279
                                                               (212) 962-1818

                                                              *Attorney for Plaintiff*
                                                              *Med-Asia Shipping Limited*


Patrick C. Crilley, Esq.
*Of Counsel*
Direct Line: (212) 619-1919

# TABLE OF AUTHORITIES

**Cases**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
460 F.3d 434 (2d Cir. N.Y. 2006) .................................................................... 7

*Freeman v. Complex Computing Co.*,
119 F.3d 1044 (2d Cir. 1997) ........................................................................ 5

*Greenwich Marine, Inc. v. S.S. Alexandra*,
339 F.2d 901 (2d Cir. 1965) ......................................................................... 4

*In re Holborn Oil Trading, Ltd.*,
774 F. Supp. 840 (S.D.N.Y. 1991) .................................................................. 4

*Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*,
475 F. Supp.2d 275 (S.D.N.Y. 2006) ............................................................ 4, 7

**Statutes**

F.R.C.P. Rules 12(b)(2) and (6) ..................................................................... 1, 8

Supplemental Rules for Certain Admiralty
and Maritime Claims of the Federal Rules
of Civil Procedure ("Rule B") ....................................................................... 1, 4

Supplemental Rules for Certain Admiralty
and Maritime Claims of the Federal Rules
of Civil Procedure ("Rule E") ....................................................................... 1, 4, 8

## PRELIMINARY STATEMENT

Plaintiff Med-Asia Shipping Limited ("Med-Asia") respectfully submits this Memorandum of Law in Opposition to Defendant Oceanic Bridge International, Inc.'s (hereinafter "Oceanic Bridge") motion to vacate maritime attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). Oceanic Bridge's motion to vacate under Supplemental Admiralty Rule E(4)(f) ("Rule E") and to dismiss under F.R.C.P. Rules 12(b)(2) and (6), should be denied because:

a) Plaintiff has sustained its burden herein to establish that reasonable grounds exist that Oceanic Bridge is the alter-ego, of Defendant Dalian Oceanicbridge International Forwarding Co. Ltd. (hereinafter "Dalian Oceanic"); b) Plaintiff has sustained its burden herein to establish that it has a prima facie maritime claim against Defendant Oceanic Bridge based upon allegations of alter-ego; c) Plaintiff has satisfied the requirements of Rule B in all other respects; and d) Defendant Oceanic Bridge is subject to the quasi-in-rem jurisdiction of this Court with respect to its property found in this district.

## THE FACTS

Plaintiff Med-Asia was at all material times the disponent owner of the vessels "ELENI K", "SEA BIRD" and "SACURA." By a fixture note dated December 22, 2006, Med-Asia chartered the vessel "ELENI K" to the entity, as named in the fixture note "Oceanicbridge International Inc., Dalian Branch." (Exhibit "C" annexed to Klappstein Decl.; see also Exhibit "B" annexed to Frankie Decl.)[1]

---

[1] The Declaration of Jan Klappstein, General Manager of Nepa Shipping Agency (HK) Ltd., the exclusive agent for Plaintiff Med-Asia, declared on September 17, 2007, shall be referred to herein as the "Klappstein Decl.". The

Prior to concluding this fixture, Med-Asia asked for information on the identity of the charterers with whom it was not familiar. (Klappstein Decl. ¶8.) On December 22, 2006, Mr. Lin of Dalian Oceanic advised Med-Asia, "Our headoffice is in Los Angeles, USA. Have branch offices in most port of China." (Klappstein Decl. ¶10, Exhibit "B" annexed to Klappstein Decl.) Attached to that email, Mr. Lin provided copies of Oceanic Bridges' USA company registration. (Klappstein Decl. ¶10 and Exhibit "B" to same.)

When the fixture negotiations were being concluded and the fixture note prepared by the broker, Frankie Tang, the name inserted in same was Oceanicbridge International Inc., Dalian Branch. This fixture note was presented to and approved by Dalian Oceanic's Mr. Lin. (Frankie Decl. ¶¶15-16.) It is Med-Asia's understanding that it had contracted with the USA Company, Oceanic Bridge, and the suffix "Dalian Branch" in the fixture note was merely designating the branch office of Oceanic Bridge through which the fixture was negotiated. (Klappstein Decl. ¶11.)

Disputes arose between the parties over detention damages during the performance of the first voyage fixture for the vessel "ELENI K". (Klappstein Decl. ¶13.) At a meeting in the Defendant's branch office in Dalian, on May 9, 2007, Mr. Klappstein received the business cards of Ms. Ma LiJun, the General Manager, (hereinafter "Ms. Ma") and Mr. Lin, the Deputy Manager. (Klappstein Decl. ¶14.) The featured corporate name on both of these business cards, in the English and the Chinese language was "Oceanic Bridge Int'l. Co. Ltd.". The address and contact details for the Los Angeles office appeared prominently on both business cards. (Klappstein Decl. ¶14; Exhibit "D".)

At dinner on May 9, 2007, Mr. Klappstein, when discussing the detention dispute over

---

Declaration of Frankie Tang, dated September 17, 2007, the broker at the firm Honor Link Limited involved in negotiating the three voyage fixtures concerned in this action, be referred to herein as the "Frankie Decl."

the "ELENI K", was advised by Ms. Ma that the USA office would decide and control what amount could be paid. (Klappstein Decl. ¶15.)

When another dispute arose concerning the voyage fixture for the vessel "SEA BIRD", Mr. Klappstein, who had, at this time, been corresponding strictly with the Dalian branch office, received an email message directly from Oceanic Bridge's USA office, signed by Mr. Richard Tang.[2] (Klappstein Decl. ¶16-18; Exhibit "E".) In this email, Mr. Tang makes numerous references to "our agreement" which can only logically mean the voyage fixture agreement for the vessel "SEA BIRD". This repeated use of the term "our agreement" is a contemporaneous admission that the contracting parties, as understood by both sides of the contract, were Med-Asia and Oceanic Bridge, the USA company.

On July 6, 2007, there being no amicable resolution to the disputes between the parties, Plaintiff Med-Asia commenced this action of maritime attachment pursuant to Rule B. A copy of the Complaint is annexed as Exhibit "A" to the Declaration of attorney Patrick C. Crilley. To date, the writ has restrained the following property of the Defendants in New York banks:

a) $74,907.00 restrained on July 13, 2007 – beneficiary Oceanic Bridge.
b) $69,982.00 restrained on July 17, 2007 - beneficiary Oceanic Bridge
c) $ 8,250.00 restrained on July 18, 2007 - beneficiary Dalian Oceanic
d) $ 7,130.00 restrained on July 21, 2007 - beneficiary Dalian Oceanic

(Crilley Decl. ¶6.)

No further funds have been restrained since July 21, 2007 (Crilley Decl. ¶7.) The writ of attachment has been continuously served on a daily basis on the major clearing banks in New York. (Crilley Decl. ¶5.) The total amount restrained by virtue of the writ of attachment issuing in this action to date is $160,269.00. (Crilley Decl. ¶8.)

---

[2] It is presumed that Richard Tang is the Americanized name of Mr. Tong Tang, the admitted President of Ocean Bridge, the USA company.

## ARGUMENT

Rule E allows any person whose property has been attached pursuant to Rule B an opportunity to appear before a district court to contest the attachment. Rule E reads, in relevant part:

> "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."

"The standard generally applied in a Rule E analysis is that the plaintiff must demonstrate that 'reasonable grounds' exist for the attachment. The 'reasonable grounds' standard involves review not only of the adequacy of the allegations in the complaint, but also of any evidence submitted by the parties. When determining whether reasonable grounds exist, 'Supplemental Rule E does not restrict review to the adequacy of the allegations in the complaint.' A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing." *Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp.2d 275, 278-279 (S.D.N.Y. 2006) (internal citations omitted). It has long been recognized that "the inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge." *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965).

"Federal common law in the Second Circuit involves a two pronged test for piercing the corporate veil: the party sought to be charged must have used its alter ego 'to perpetrate a fraud or have so dominated and disregarded [its alter ego's] corporate form' that the alter ego was actually carrying on the controlling party's business instead of its own." *In re Holborn Oil*

*Trading, Ltd.,* 774 F. Supp. 840, 844 (S.D.N.Y. 1991) (quoting *Kirno Hill Corp. v. Holt,* 618 F.2d at 985 (2d Cir. 1980).

"In determining whether 'complete control' exists, [the Second Circuit has] considered such factors as: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities. No one factor is decisive." *Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1053 (2d Cir. 1997).

With these guidelines in mind, we examine the facts currently before the Court.

As noted in both the Klappstein Decl. and Frankie Decl., the name of the charterer in the first fixture for the vessel "ELENI K" was "Oceanic Bridge International Inc., Dalian Branch." Neither of the Defendant's declaring witnesses, Mr. Tang or Ms. Ma, make any mention of this company in their declarations. Med-Asia believed and maintains that this fixture was with Oceanic Bridge, the USA Company. (Klappstein Decl.¶11.) If Defendants deny the fixture is with the USA company, then they would be admitting a disregard of corporate formalities in contracting in the name of a company that perhaps does not exist as a registered entity in any jurisdiction.

Contrary to Ms. Ma's assertions in her declaration of the complete separateness of Dalian Oceanic from Oceanic Bridge, Ms. Ma distributes business cards prominently displaying the name, address and contact details of the USA company, naming her as General Manager. Mr.

5

Lin is likewise named as Deputy Manager on his business card also bearing the name of the USA company. (Klappstein Declaration ¶14 and Exhibit "D" annexed thereto.)

With respect to any intermingling of funds, Mr. Frankie declares that, although the "ELENI K" fixture was, as he and Plaintiff understood it, with the USA company, the payment of the freight charges were made by Dalian Oceanic. (Frankie Decl. ¶ 17 and annexed Exhibit "D".)

With respect to "overlapping ownership, officers, directors, and personnel" Mr. Tong Tang admits that he is not only a Director of the two companies, but is in fact the President of both companies. (Tang Decl. ¶8.) Overlapping ownership is readily admitted, with the claim that Oceanic Bridge owns forty percent (40%) of the outstanding shares of Dalian Oceanic. (Tang Decl. ¶4 and Lijun Decl. ¶4). However, and as further example of the disregard of corporate formalities, the certified translation of Dalian Oceanic's Certificate of Approval (Exhibit "A" annexed to the Ma Decl.) names another company altogether, "United States Oceanic Bridge International Forwarding Co., Ltd." as the shareholder.

Turning to the factor of common office space, address and telephone numbers of corporate entities, Defendants ignore the 21st century equivalent of these factors, that being a corporation's website, advertising its existence and activity to the world. Oceanic Bridge maintains the website "www.oceanicbridge.com" on which it advertises its "dedicated network of offices" as a seamless company, "<u>one</u> of the world leading providers of ocean logistics." (Underlining added.) (Klappstein Decl. ¶19 and annexed Exhibit "F".)  In addition, all of the offices share the same email address domain "@oceanicbridge.com". The sharing of this website and email address domain is no different than sharing a common street address or telephone number.

Ms. Ma's statement to Mr. Klappstein at dinner on May 9th, 2007 in Dalian, that she "had to check with the USA office as to what could be paid" on the "ELENI K" detention charges, exemplifies the lack of discretion exercised by her dominated corporation Dalian Oceanic. (See Klappstein Decl. ¶15.) Mr. Tong Tang's email of June 14, 2007, from Oceanic Bridge in the USA directly to Mr. Klappstein, repeatedly referring to "our agreement" further demonstrates his and Oceanic Bridge's complete control over the Chinese branch offices, particularly with respect to the dealings with Med-Asia. (Klappstein Decl. ¶¶16-18 and Exhibit "E" thereto.)

All of the above support Med-Asia's allegations (Complaint ¶¶8-14 and 50; annexed as Exhibit to Crilley Decl.) that the Defendants share an alter-ego, acting and representing to the world, that they are one single entity. Oceanic Bridge represented to Med-Asia directly through its pre-fixing correspondence (Klappstein Exhibit "B"), its corporate name on the original December 22, 2006 fixture recap (Klappstein Exhibit "C"), through its representatives' business cards (Klappstein Exhibit "D") and through its June 14th, 2007 direct correspondence to Med-Asia (Klappstein Exhibit "E") that "our agreements" were with one company under the control of the USA head office. Through its own website, Oceanic Bridge advertises to the world that it is one company with "dedicated network offices". (Klappstein Exhibit "F".) The USA office and these branch offices are intimately connect and effectively operate as one.

Whether applying a "prima facie standard", where the plaintiff's burden is merely to show that it has alleged "a valid prima facie admiralty claim against the defendant...." (see *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. N.Y. 2006), or applying a "reasonable grounds standard", where the Court must look to the Verified Complaint and any evidence submitted by the Parties (see Wajilam Exps., *supra*), plaintiff has sustained its burden to support the attachment of Defendant Oceanic Bridges' property under Supplementary

Rule E(4)(f) and to defeat a motion to dismiss for failure to state a cognizable claim under F.R.C.P. 12(b)(6). The valid attachment of Defendant Oceanic Bridges' property in this district, in the amount $160,269.00, by virtue of the writ of attachment issuing in this action, entitles the Plaintiff to quasi-in-rem jurisdiction over Oceanic Bridge, and is a proper basis for denial of Defendant's motion to dismiss for lack of jurisdiction pursuant to F.R.C.P. 12(b)(2).

### **LEAVE TO AMEND THE COMPLAINT**

In the event that the Court deems the Complaint deficient and considers dismissal and vacatur as to Defendant Oceanic Bridge, Plaintiff respectfully requests the leave of the Court, pursuant to F.R.C.P. Rule 15, to file an amended complaint, as justice and equity so require, to conform to the evidence produced by Defendants in this proceeding, i.e. that there is no corporate entity named "Oceanic Bridge International Inc., Dalian Branch" - the party named as charterer in the first voyage fixture for the vessel "ELENI K" - so that in Plaintiff's Amended Verified Complaint, Plaintiff's first cause of action be re-alleged directly against Defendant Oceanic Bridge. Plaintiff requests that such amended complaint and any amended writ of attachment issued, be deemed to relate back to the date of the original complaint and that the property of the Defendant Oceanic Bridge, currently restrained by the writ of attachment issuing in this case, remain under restraint until such time as an amended complaint and amended writ can be filed and issued, respectively, in this matter.

### **CONCLUSION**

For all the foregoing reasons, this Court should deny Defendant Oceanic Bridge's motion to vacate the attachments herein pursuant to Rule E(4)(f) of the Supplemental Rules and further, deny Defendant's motion to dismiss the Complaint pursuant to F.R.C.P. Rules 12(b)(2) and (6).

In addition and/or in the alternative, this Court should grant the Plaintiff leave to amend the complaint and, further, that such amended complaint and any amended writ of attachment issued thereunder, be deemed to relate back to the date of the original complaint and be effective against all of Defendants' property presently restrained in the District.

Dated : New York, New York
September 18, 2007

Patrick C. Crilley (PC-9057)
*Of Counsel to*
Richard A. Zimmerman
Attorneys for Plaintiff
233 Broadway, Suite 2202
New York, New York 10279
(212) 619-1919

To:

James F. Sweeney, Esq.
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Attorneys for Defendant
OCEANIC BRIDGE INTERNATIONAL INC.