**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
MED-ASIA SHIPPING LIMITED

                              Plaintiff,

                                          07 CIV 6258 (LTS) (AJP)

      - against -

OCEANIC BRIDGE INTERNATIONAL,
INC., d/b/a OCEANIC BRIDGE INTL, INC.
DALIAN BRANCH, a/k/a DALIAN
OCEANICBRIDGE INTERNATIONAL
FORWARDING CO., LTD.,

                              Defendants.
-------------------------------------------------------x

**DEFENDANT OCEANIC BRIDGE INTERNATIONAL INC.'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS**
**MOTION TO VACATE THE ATTACHMENTS AND**
**TO DISMISS THE AMENDED COMPLAINT**

                                    NICOLETTI HORNIG & SWEENEY
                                    Wall Street Plaza
                                    88 Pine Street, 7th Floor
                                    New York, New York 10005-1801
                                    Tel: (212) 220-3830
                                    Fax: (212) 220-3780

                                    *Attorneys for Defendant*
                                    *OCEANIC BRIDGE INTERNATIONAL INC.*

Of Counsel:

   James F. Sweeney

**PRELIMINARY STATEMENT**

Defendant Oceanic Bridge International Inc. ("OB") respectfully submits this Reply Memorandum of Law in further support of its motion, pursuant to Supplemental Admiralty Rule E(4)(f) to vacate the attachments of certain electronic funds transfers and, pursuant to Federal Civil Procedure Rules 12(b)(2) and (6), to dismiss the Complaint. Because it is not the *alter ego* of Dalian Ocean Bridge International Forwarding Co. Ltd. ("Dalian") or, for that matter, "Oceanic Bridge International Inc., Dalian Branch," Defendant OB's assets were wrongly attached and should no longer be restrained.

**ARGUMENT**

"Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996). "[A] Rule B attachment on an alleged alter ego's property cannot be sustained in the absence of a showing of at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil." Brave Bulk Transp. Ltd. v. Spot on Shipping, Ltd., No. 07 Civ. 4546CM, 2007 WL 2734291, at *1 (S.D.N.Y. Sept. 17, 2007) (emphasis added).

Med-Asia contends that Defendant OB was the charterer of the ELENI K simply because neither Mr. Tang nor Ms. Lijun made any mention in their earlier Declarations of the entity "Oceanic Bridge International Inc., Dalian Branch," which is the name of the charterer of the ELENI K as it appears in the charter agreement. Med-Asia's Mem. at 5 (Docket No. 11). Further, according to Med-Asia's logic, if OB is not the charterer, then OB "would be admitting a disregard of corporate formalities." Id. The

1

corner Med-Asia attempts to paint OB into is neither logically consistent nor supported by the facts.

When Edward Lin, the Dalian employee responsible for Dalian's chartering business, received the charter agreement for the ELENI K, he noted that both the owner and charterer's names were incorrect.  Mr. Lin spoke with Mr. Frankie Tang, who advised that Med-Asia was just another name for Nepa Shipping HK Ltd. ("NEPA").  Mr. Lin requested that Mr. Frankie Tang correct the charterer's name and that Dalian be named in the agreement.  Ex. 4 ¶ 10 (Lin Decl.).[1]  Shortly after their conversation, Mr. Lin wrote an e-mail to Mr. Frankie Tang, which stated:  "Pls correct the chrts name as below:  DALIAN OCEANIC BRIDGE INTERNATIONAL FORWARDING CO., LTD.  'Oceanicbridge International Inc. Dalian Branch' is not exist!"  Ex. 4 ¶ 10 (Lin Decl.) & Ex. B thereto. After he sent the e-mail, Mr. Lin again called Mr. Frankie Tang who confirmed that the charter agreement was between Dalian and Med-Asia.  See Ex. 4 ¶ 11 (Lin Decl.).

The Declaration of Dalian's General Manager, Ma Lijun, corroborates the fact that Mr. Frankie Tang was advised of the mistaken name in the charter agreement. Ex. 5 ¶ 9 (Lijun Decl.).  Mr. Frankie Tang confirmed the parties' mutual understanding that the charter agreement was between Med-Asia and Dalian.  See id.  However, he allegedly could not immediately change the name in the charter agreement because of his dinner plans.  See id.  When Ms. Lijun signed and sealed the charter agreement, she did so on behalf of Dalian.  See id.

---

[1] Citations to Ex. "__" reference the exhibits filed in support of the motion to vacate (exhibits "1" through "3") annexed to the Affidavit of James F. Sweeney, Esq. dated August 6, 2007 (Docket No. 7) and the exhibits accompanying this Reply Memorandum of Law (exhibits "4" through "7"), which are annexed to the Affirmation of James F. Sweeney, Esq. dated October 8, 2007.

2

Ultimately, the invoice for the voyage was sent to Dalian's office, and Dalian paid the full amount to NEPA's agent.  Ex. 5 ¶ 10 (Lijun Decl.).  When NEPA drafted the subsequent charter agreement and again used the non-existent entity "Oceanic Bridge International Inc., Dalian Branch" as the charterer, Dalian again objected and the mistake was finally corrected.  See id. ¶ 11.

Succinctly summarized, the reason "Oceanic Bridge International Inc., Dalian Branch" was not mentioned in the Declarations is because the entity does not exist and both Dalian and Med-Asia's agent, Mr. Frankie Tang, understood the reference to that entity in the charter agreement to be an error.  More importantly, both Med-Asia and Dalian understood and agreed that the charter agreement was between those entities and not OB as Med-Asia now contends.  Mr. Frankie Tang's failure to correct his error, and both OB and Dalian's denials that such an entity exists is in no way indicative of domination or control, let alone a degree sufficient to establish the specific facts that would warrant piercing the corporate veil.

The mere fact that OB has a corporate interest in Dalian, is insufficient, in fact or at law, to disregard corporate distinctions and/or to "pierce the corporate veil."  See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996).  Here OB maintains a forty (40%) percent stake as shareholder in Dalian, but even total stock ownership of a company, which is not present here, does not equate to an *alter ego*.  See, e.g., Williams v. McAllister Bros. Inc., 534 F.2d 19, 21 (2d Cir. 1976) ("Ownership by a parent of all its subsidiary's stock has been held an insufficient reason in and of itself to disregard distinct corporate entities.").  "Actual domination, rather than the opportunity to exercise control, must be shown."  Id.  The President of OB, in his uncontradicted Declaration, states that

3

Dalian was operated and run separately and independently from OB.  See Ex. 2 ¶ 4 (Tang

Decl.).  The OB President's Declaration is corroborated and reinforced by the uncontested

Declaration of the General Manager of Dalian, Ma Lijun.  See Ex. 3 ¶¶ 4 & 17 (Lijun

Decl.).

   Med-Asia does not, indeed cannot, direct the Court to any common office

space, addresses, and telephone numbers.  Instead, without any legal or factual support

Med-Asia wrongly equates brick and mortar legal requirements, such as office space,

address, and telephone numbers, to websites and domain names from cyberspace.

According to Med-Asia, the common domain name for the two companies (i.e.,

"oceanbridge.com") is somehow indicative of complete control and a disregard of

corporate formalities.  No such inference can be drawn merely because a "network" of

affiliated companies share a common domain name.  By Med-Asia's logic, every company

or person who uses the "aol.com," "gmail.com," or "yahoo.com," domain names and

every attorney who uses "law.com" subjects AOL, Google, and Yahoo to liability based

upon its *alter ego* theory.  In this case, the common domain name provided a convenient

and recognizable name for the "network" of companies and each of the companies in the

network had different usernames.  See Ex. 7 (www.oceanicbridge.com/network.htm).

   With regard to the "network" of companies, Med-Asia disingenuously

asserts that the common website advertises the "network" of companies "as a seamless

company, 'one of the world leading providers of ocean logistics.'"  Med-Asia's Mem. at 6

(Docket No. 11).  Med-Asia's memorandum directs the Court only to the section of the

website labeled "About Us" and not the "Network" section of the website.  Under that

"Network" section, the website identifies five distinct companies that together provide a

valuable service to shippers.  Each of the five companies have separate and individual corporate addresses, telephone numbers, fax numbers, and e-mail usernames.  <u>See</u> Ex. 6 ¶ 6 (Tang Decl.); Ex. 7 (www.oceanicbridge.com/network.htm). In sum, they are not *alter egos* of one another.

### CONCLUSION

For all of the foregoing reasons and because this defendant is not an *alter ego*, this Court should vacate the attachments herein pursuant to Rule E (4) (f) of the Supplemental Rules and dismiss the Complaint pursuant to Rules 12 (b) (2) and (6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
       October 8, 2007

                              Respectively submitted,

                              NICOLETTI HORNIG & SWEENEY
                              *Attorneys for Defendant*
                              *OCEANIC BRIDGE INTERNATIONAL INC.*

                    By:_____s/ James F. Sweeney_____
                              James F. Sweeney (JFS-7745)
                              Wall Street Plaza
                              88 Pine Street, 7th Floor
                              New York, New York  10005-1801
                              Telephone No.: (212) 220-3830
                              Facsimile No.: (212) 220-3784
                              E-mail: jsweeney@nicolettihornig.com
                              (FILE NO.: 99000003 JFS)

TO:

Richard A. Zimmerman, Esq.
Suite 2202
233 Broadway
New York, New York 10279
Attorneys for Plaintiff