**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
MED-ASIA SHIPPING LIMITED

                Plaintiff,

                                     07 CIV 6258 (LTS) (AJP)

    - against -

OCEANIC BRIDGE INTERNATIONAL,
INC., d/b/a OCEANIC BRIDGE INTL, INC.
DALIAN BRANCH, a/k/a DALIAN
OCEANICBRIDGE INTERNATIONAL
FORWARDING CO., LTD.,

                Defendants.
-------------------------------------------------------x

## DEFENDANT OCEANIC BRIDGE INTERNATIONAL INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF CERTIFICATION

                            NICOLETTI HORNIG & SWEENEY
                            Wall Street Plaza
                            88 Pine Street, 7th Floor
                            New York, New York 10005-1801
                            Tel: (212) 220-3830
                            Fax: (212) 220-3780

                            *Attorneys for Defendant*
                            *OCEANIC BRIDGE INTERNATIONAL INC.*

Of Counsel:

    James F. Sweeney
    William M. Fennell

## PRELIMINARY STATEMENT

Defendant Oceanic Bridge International Inc.("Ocean Bridge") respectfully submits this Memorandum of Law in support of its motion to certify the Court's October 12, 2007 Order (Docket No. 19) (the "Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).   As appears from the record at the October 12, 2007, hearing held pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure[1] ("Admiralty Rules") and from the legal briefs and Declarations filed in connection with the Defendant's Motion to Vacate (Docket No. 7), the legal questions raised therein involve a controlling question of law as to which there is substantial ground for difference of opinion. Specifically, the legal standard cited and relied upon by the Court in denying the Defendant's motion results in a clear denial of due process.   The said standard permits a party's funds (or other property) to be seized and attached based on mere allegations — which, in turn, are made only "upon information and belief."   Thus, the prompt hearing that due process requires is no hearing at all because the Court's decision is preordained with the filing of the Complaint and any evidentiary proffers from Defendant are wholly irrelevant.   Defendant is effectively deprived of its "day in court."

## FACTUAL BACKGROUND

This action arises out of the alleged breach of charter party agreements (or "Fixture Notes").   Having filed a Verified Complaint alleging a (wholly specious) alter ego relationship, Plaintiff moved ex parte for an order directing the Clerk to issue writs of Maritime Attachment and Garnishment ("maritime attachments"), which the Court granted (Docket No. 4).   Plaintiff thereby successfully attached various electronic fund transfers, and Defendant then moved to

---

[1]  A copy of the official transcript of that hearing is attached hereto as Exhibit A.

vacate the attachment relying, _inter alia_, upon sworn Declarations that no such _alter ego_ relationship existed.

On October 12, 2007, at a Rule E(4)(f) hearing, this Court by the Honorable United States District Judge Laura Taylor Swain filed and entered an Order denying Defendant's motion to vacate.  In denying the Defendant's motion, the Court stated:  "But the requirement at this stage is satisfaction and articulation of the _prima facie_ admiralty claim and the verified complaint is itself sufficient."  That standard, when applied to monies attached on naked _alter ego_ allegations amounts to a denial of due process.

## **LEGAL ARGUMENT**

Oceanic Bridge submits that the Court's Order presents a controlling question of law that warrants immediate appeal.  Accordingly, Oceanic Bridge requests that the Court certify its prior Order or amend its prior Order pursuant to Federal Civil Procedure Rule 60(b) to include a determination that the Order be immediately appealable pursuant to 28 U.S.C.§ 1292(b).

Section 1292(b) provides that

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

A court "may permit an interlocutory appeal if it finds that:  (1) the order 'involves a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and that (3) 'appeal from the order may materially advance the ultimate termination of the litigation.'" _Klein v. Vision Lab Telecomm., Inc._, 399 F. Supp. 2d 528, 536 (S.D.N.Y. 2005 (quoting 28 U.S.C. § 1292(b)).

The resolution of an issue need not necessarily terminate an action in order to be "controlling" for purposes of certification.  See Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990); see also 19 James W. Moore, Moore's Federal Practice § 203.31[3] (3d ed. 2000) ("Even though a controlling question need not dispose of, but only advance the ultimate termination of, the litigation, it must nevertheless present a clear-cut question of law against a background of established facts.").  The Second Circuit has held that controlling issues of law include determinations that "are likely to have precedential value for a large number of other suits . . . pending in the Southern District." Brown v. Bullock, 294 F.2d 415, 417 (2d Cir. 1961); see also Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 890 F. Supp. 322, 329 (S.D.N.Y. 1995).  "[I]n regard to the second prong, the substantial ground for a difference of opinion within the meaning of § 1292(b) must arise out of a genuine doubt as to the correct applicable legal standard that was relied on in the order." In re Worldcom, Inc., No. M-47 HB, 2003 WL 21498904, at *10-11 (S.D.N.Y. June 30, 2003) (internal quotation marks omitted). "The decision whether to grant an interlocutory appeal from a district court order lies within the district court's discretion."    Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007).

Defendant seeks certification on the discrete issue of whether the Court's application of the prima facie standard to Plaintiff's alter ego allegations was a denial of due process.  The Court used this standard to uphold the Plaintiff's maritime attachment, which had the effect of rendering the Rule E(4)(f) post-seizure hearing hollow.  The Admiralty Rule E(4)(f) hearing requirement provides:  "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these

rules." <u>Id.</u> (emphasis added).  The requirement for a "prompt hearing" was added to Rule E(4)(f)

in 1985 to address any possible due process concerns.  <u>See</u> <u>Winter Storm Shipping, Ltd. v. TPI</u>,

310 F.3d 263, 271-72 (2d Cir. 2002) (discussing historical development of maritime attachments

and due process concerns).  The Advisory Committee notes for the Rule explains:

> Rule E(4)(f) makes available the type of prompt post-seizure
> hearing in proceedings under Supplemental Rules B and C that the
> Supreme Court has called for in a number of cases arising in other
> contexts.  <u>See</u> <u>North Georgia Finishing, Inc. v. Di-Chem, Inc.</u>,
> 419 U.S. 601 (1975); <u>Mitchell v. W.T. Grant Co.</u>, 416 U.S. 600
> (1974).  Although post-attachment and post-arrest hearings always
> have been available on motion, an explicit statement emphasizing
> promptness and elaborating the procedure has been lacking in the
> Supplemental Rules.  Rule E(4)(f) is designed to satisfy the
> constitutional requirement of due process by guaranteeing to the
> shipowner a prompt post-seizure hearing at which he can attack the
> complaint, the arrest, the security demanded, or any other alleged
> deficiency in the proceedings.

Fed. R. Civ. P. Supp. R. E advisory committee's note (1985).

The sole authority relied upon by the Court in applying the <u>prima facie</u> standard to the

Plaintiff's <u>alter ego</u> allegations was <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>,

460 F.3d 434, 436 (2d Cir. 2006).  The Second Circuit in <u>Aqua Stoli</u> set forth the circumstances

in which a maritime attachment could be vacated, but it did not set forth the burden of proof

required at the hearing to uphold or vacate an attachment.  <u>See</u> <u>SPL Shipping Ltd. v. Gujarat</u>

<u>Cheminex Ltd.</u>, No. 06-CV-15375, 2007 WL 831810, at *3 (S.D.N.Y. Mar. 15, 2007):

> The question presented here is: what does Plaintiff have to show in
> order to meet the requirements of Rule B?  That question,
> however, was not directly before the <u>Aqua Stoli</u> court. . . .
> Subsequently, lower courts in this District have taken the <u>Aqua</u>
> <u>Stoli</u> holding to mean that a plaintiff's burden at a Rule E(4)(f)
> hearing is to show only that it has a valid <u>prima facie</u> maritime
> claim against the defendant." (internal citations omitted).

Further, <u>Aqua Stoli</u> did not involve, let alone decide the burden a plaintiff bears at the Rule E(4)(f) hearing with respect to allegations that a defendant is an <u>alter ego</u> of another party.

Before <u>Aqua Stoli</u>, Judge Scheindlin had articulated the difference between the burden of proof required to obtain the attachment and the burden of proof at the "prompt hearing" required by due process. In <u>Ullises Shipping Corp. v. FAL Shipping Co.</u>, 415 F. Supp. 2d 318, 325 (S.D.N.Y. 2006), <u>overruled on other grounds by Aqua Stoli Shipping Ltd.</u>, 460 F.3d 434, Judge Scheindlin explained: "But although a minimal <u>prima facie</u> showing is sufficient to justify an attachment under Rule B, under Rule E(4)(f), [plaintiff] has the burden of presenting some evidence showing <u>reasonable grounds</u> for the attachment." <u>Id.</u> (emphasis added). <u>Accord Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.</u>, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006) (stating <u>Aqua Stoli</u> did not discuss whether "its holding had any impact on the 'reasonable grounds' inquiry as it relates to the 'valid <u>prima facie</u> claim' analysis"). The decision in <u>Ullises</u> is particularly instructive because, as here, it involved attachments based on <u>alter ego</u> theories, which Judge Scheindlin assessed using the reasonable grounds standard. <u>See Ullises Shipping Corp.</u>, 415 F. Supp. 2d at 325-26. The court found that the plaintiff had presented sufficient evidence to uphold the attachment against only some of the defendants on an <u>alter ego</u> theory; reasonable grounds did not exist as against all defendants. <u>See id.</u>

Significantly, <u>Aqua Stoli</u> did nothing to change the distinct burdens of proof borne by the plaintiff, first to obtain the attachment and, second, to uphold the attachment at the hearing. Rather, <u>Aqua Stoli</u> set forth the conditions (but did not define the burden of proof) in which vacatur of a maritime attachment was proper:

> [O]nce a plaintiff has carried his burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon circumstances not present in this case. Circumstances that may justify a vacatur

> can occur where 1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment.

Aqua Stoli Shipping Ltd., 460 F.3d at 436.  In determining when to vacate an attachment, the Court of Appeals in Aqua Stoli also established the burden of proof required to obtain the attachment in the first instance (but again not at the Rule E(4)(f) hearing).  In discussing the requirements for a valid Rule B maritime attachment, the court stated that attachment should issue if "the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd., 460 F.3d at 445.  The court then stated the truism that if the plaintiff failed to meet its burden then it had failed to satisfy the requirements of Rule B and E.  See id. ("Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E.").

Respectfully, courts within this district have misconstrued the holding of Aqua Stoli and have (mistakenly Defendant submits) upheld attachments based upon a "prima facie" showing by the plaintiff at the Rule E(4)(f) hearing.  See, e.g., Dolco Inv., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 266-69 (S.D.N.Y. 2007).  However, not all district court cases are in accord and even individual judges have been inconsistent.  See Wajilam Exports (Singapore) Pte. Ltd., 475 F. Supp. 2d at 278 ("The standard generally applied in a Rule E(4)(f) analysis is that the plaintiff must demonstrate that 'reasonable grounds' exist for the attachment.").  For instance, Judge McMahon surveyed the decisions in the district and concluded that the "weight of authority" is to apply the prima facie standard when considering the adequacy of a claim in a maritime vacatur motion.  See Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty

Ltd., No. 07-CV-5798, 2007 WL 2872477, at *9 (S.D.N.Y. Oct. 1, 2007). However, less than a month earlier Judge McMahon vacated an attachment on the grounds that "a Rule B attachment on an alleged alter ego's property cannot be sustained in the absence of a showing of at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil." Brave Bulk Transport Ltd. v. Spot on Shipping, Ltd., No. 07-CV-4546, 2007 WL 2734291, at *1 (S.D.N.Y. Sept. 17, 2007) (emphasis added).

Defendant submits that Judge Scheindlin's "reasonable grounds" standard is the correct burden of proof required at any Rule E(4) hearing. Alternatively, applying the prima facie standard leads to the unconstitutional taking of property and denial of a fair hearing because the defendant's evidence is not even considered by the court. See, e.g., Wilhelmsen Premier Marine Fuels AS, 2007 WL 2872477, at *9 ("Under this standard, the Court looks only to the Complaint to determine whether the plaintiff has alleged a valid admiralty claim against the defendant."); SPL Shipping Ltd., 2007 WL 831810, at *3 ("[T]he Court will determine the sufficiency of Plaintiff's Verified Complaint under the prima facie test, rather than the reasonable grounds test."). By examining only the "upon information and belief" averments of the Complaint, Defendant's contravening evidentiary proffers are rendered wholly meaningless particularly so with respect to the "upon information and belief" alter ego allegations. Because the arguments and evidence presented at the hearing would never be considered in determining whether to uphold the attachment, the hearing was tantamount to no hearing at all and was therefore a deprivation of due process.

As in Consub Delaware LLC, certification of the Court's Order is warranted in this case because all three elements of section 1292(b) are met. First, the issue — whether the Court

applied the proper standard to assess Plaintiff's <u>alter ego</u> allegations in upholding the maritime attachment — is a purely legal question that does not require any reference to the factual record.

Second, as discussed above there is substantial ground for a differences of opinion regarding whether the mere complaint is sufficient to uphold a maritime attachment against an alleged <u>alter ego</u>.  For example, within the past two months there have been conflicting decisions from courts in this district.  <u>Compare</u> <u>Brave Bulk Transp. Ltd.</u>, 2007 WL 2734291, at *1 (requiring "at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil") <u>with</u> <u>Wilhelmsen Premier Marine Fuels AS</u>, 2007 WL 2872477, at *9 (stating the weight of authority in this district is to apply the <u>prima facie</u> standard and applying same).

Third, an immediate appeal from the Order should materially advance the ultimate termination of the litigation.  If Defendant prevails on the appeal, the Rule B attachment will be vacated and will result in a termination of the litigation, as the Court will lack <u>in personam</u> jurisdiction over defendant.      <u>See, e.g.</u>, <u>Consub Delaware LLC</u>, 476 F. Supp. 2d at 313-14; <u>Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.</u>, 461 F. Supp. 2d 222, 226 (S.D.N.Y. 2006) (concluding that certification of order granting motion to vacate would materially advance the ultimate termination of the litigation).  Consequently, the Court's Order should be certified for immediate appeal, and defendant so prays.

<u>**CONCLUSION**</u>

Based upon the foregoing reasons, Defendant Oceanic Bridge International Inc. respectfully requests that the Court exercise its discretion and certify its Order, dated October 12, 2007, for immediate appeal pursuant to 28 U.S.C § 1292.

Dated: New York, New York
      November 19, 2007

Respectively submitted,

NICOLETTI HORNIG & SWEENEY
*Attorneys for Defendant*
*OCEANIC BRIDGE INTERNATIONAL INC.*

By:          s/ James F. Sweeney
      James F. Sweeney (JFS-7745)
      Wall Street Plaza
      88 Pine Street, 7th Floor
      New York, New York  10005-1801
      Telephone No.: (212) 220-3830
      Facsimile No.: (212) 220-3784
      E-mail: jsweeney@nicolettihornig.com
      (FILE NO.: 99000003 JFS)

TO:

Richard A. Zimmerman, Esq.
Suite 2202
233 Broadway
New York, New York 10279
Attorneys for Plaintiff

X:\Public Word Files\9913\LEGAL\Motion for Certification -- MOL (Final- s.sa).doc

**Exhibit A**

1

7ACMMEDC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    MED-ASIA SHIPPING LIMITED,

4                    Plaintiff,

5              v.                              07 Civ. 6258 (LTS)

6    OCEANIC BRIDGE INTERNATIONAL,
     INC., d/b/a Oceanic Bridge
7    Int'l Inc. Dalian branch,
     a/k/a Dalian Oceanicbridge
8    International Forwarding Co.,
     Ltd.,

9
                    Defendant.
10
     ------------------------------x
11
                                              New York, N.Y.
12                                            October 12, 2007
                                              3:30 p.m.
13   Before:

14              HON. LAURA TAYLOR SWAIN,

15                                            District Judge

16                        APPEARANCES

17   RICHARD A. ZIMMERMAN
          Attorney for Plaintiff
18   BY:  PATRICK C. CRILLEY

19   NICOLETTI HORNIG & SWEENEY
          Attorneys for Defendant
20   BY:  JAMES F. SWEENEY
          WILLIAM M. FENNELL
21

22

23

24

25

1

7ACMMEDC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MED-ASIA SHIPPING LIMITED,

4                   Plaintiff,

5           v.                              07 Civ. 6258 (LTS)

6   OCEANIC BRIDGE INTERNATIONAL,
    INC., d/b/a Oceanic Bridge
7   Int'l Inc. Dalian branch,
    a/k/a Dalian Oceanicbridge
8   International Forwarding Co.,
    Ltd.,
9
                    Defendant.
10
    ------------------------------x
11                                         New York, N.Y.
                                           October 12, 2007
12                                         3:30 p.m.

13  Before:

14                  HON. LAURA TAYLOR SWAIN,

15                                         District Judge

16                       APPEARANCES

17  RICHARD A. ZIMMERMAN
         Attorney for Plaintiff
18  BY:  PATRICK C. CRILLEY

19  NICOLETTI HORNIG & SWEENEY
         Attorneys for Defendant
20  BY:  JAMES F. SWEENEY
         WILLIAM M. FENNELL
21

22

23

24

25

7ACMMEDC

1          (Case called)

2          THE COURT:  I have been handed up some surreply papers

3    on behalf of plaintiffs.  As the cover letter notes, I do not

4    normally entertain surreply papers.  I did not authorize

5    surreply papers and I'm not going to consider the surreply

6    papers.

7          MR. CRILLEY:  Your Honor, if I could comment on that,

8    if you allow me.  This is a supplemental Rule E(4) hearing as

9    well as a motion to dismiss hearing.  The plaintiff has the

10   burden of proving his attachment is reasonable.  In the

11   defendant's reply papers the defendant's witness says:  I am

12   from Dalian Oceanicbridge International Forwarding Company,

13   Limited, denying that she represents the California company,

14   Ocean Bridge International Transportation, Inc., I believe is

15   the name of the California company.

16         The papers I've submitted this morning, Exhibits H and

17   Exhibits I, specifically are copies of correspondence from that

18   witness, Ma Lijun, signed again and again, Ma Lijun Oceanic

19   Bridge Transportation, Inc., a California company.  She claims

20   she didn't have a card, yet her correspondence numerous

21   correspondence are -- that are produced in Exhibit H go to the

22   heart of the matter she has raised in her reply papers.

23         THE COURT:  You've made your record as to your offer

24   of proof.

25         In addition to addressing the Rule E(4)(f) issues

7ACMMEDC

1    today I will also address and in fact I'll first address the

2    defendant's pending motion to dismiss the complaint.  And my

3    ruling on that motion to dismiss, pursuant to Rule 12(b)(6), is

4    as follows:

5            The motion is denied.  The motion relies on the

6    proffer of declarations and other matters outside of the

7    complaint intended to controvert the factual premises of the

8    complaint.  However, on a motion to dismiss pursuant to Rule

9    12(b)(6), the Court must take the allegations of the complaint

10   as true and does not look beyond the pleadings.

11           Here, the verified complaint contains detailed

12   allegations concerning actions of Dalian Oceanic Bridge and the

13   alleged connections and relationship between Oceanic Bridge

14   International and Dalian Oceanicbridge.  It may well be that at

15   later stages of these proceedings the defendant may

16   successfully controvert these allegations, but a 12(b)(6)

17   motion is not the appropriate procedural vehicle for seeking to

18   do so.

19           Therefore, the Court finds, having reviewed the

20   complaint, that it is sufficient to state the cause of action

21   asserted therein as against both Oceanic Bridge and Dalian

22   Oceanic Bridge, and the motion to dismiss the complaint

23   pursuant to Rule 12(b)(6) is therefore denied.

24           The aspect of the motion that seeks dismissal pursuant

25   to Rule 12(b)(2) relating to personal jurisdiction is also

1    denied.  The attachment procedure exists in order to support

2    the exercise of quasi in rem jurisdiction.  Oceanic Bridge

3    International has assets in the district which had at this

4    point been attached.  We will deal with the attachment issue

5    shortly.  But there is, on the basis of that attachment, quasi

6    in rem jurisdiction and the motion to dismiss premised on the

7    lack of the presence by the defendant in the district is

8    denied.

9            Did counsel want to be heard on the legal issues

10   relating to the Rule E(4)(f) attachment question?

11           MR. SWEENEY:  Yes, your Honor, please.

12           THE COURT:  That is Mr. Sweeney?

13           MR. SWEENEY:  Yes.

14           THE COURT:  Let me just ask the deputy, Ms. Ng, do you

15   have the cards?

16           THE DEPUTY CLERK:  Yes.

17           THE COURT:  The deputy is the time keeper.  You have

18   ten minutes.  You want to reserve anything for rebuttal?

19           MR. SWEENEY:  I would like to split that seven and

20   three.

21           THE COURT:  Very well then.

22           MR. SWEENEY:  Your Honor, as demonstrated in the

23   declarations that we did submit on this motion and in the reply

24   declarations, defendant Oceanic Bridge International is not the

25   alterego of Dalian Oceanbridge International Forwarding Co.

7ACMMEDC

1          If I might, just because of the names are so similar,

2    if I could refer to them as OB for Oceanic Bridge, with the

3    Court's permission, as we have done in moving papers, and

4    Dalian, just sot that we can try and keep them straight.

5    Otherwise, the names, being similar, tend to overlap and it's

6    confusing.

7          THE COURT:  That's fine.  You can certainly do that.

8          What I would like you to address before going into the

9    factual proffers -- and I have read the papers very carefully.

10   I've seen the business cards and read the e-mails and looked at

11   the company names on the e-mails.  Why is it that I should be

12   looking at the credibility or sustainability of the factual

13   allegations at all at this stage?  It seems to me that the case

14   law is very strongly focused on the question of whether the

15   verified complaint or the verified complaint plus any

16   additional evidence proffered by the plaintiff is sufficient to

17   sustain a prima facie case, prima facie admiralty claim against

18   the entity whose assets have been attached.  And in Judge

19   Wood's opinion following on Aqua Stoli, it certainly makes very

20   explicit the point that fact finding is not the exercise at

21   this stage.  So why is it that I should be weighing evidence

22   and making factual calls at this point?

23         MR. SWEENEY:  Because, your Honor, if we take a look

24   at their complaint and then we take a look at the declarations

25   submitted by the plaintiffs, they contradict each other.  In

7ACMMEDC

1    other words, the complaint is made on information and belief.

2    Then when we get to, let's say, hard evidence submitted by this

3    plaintiff, it goes the exact opposite way.

4        For instance, take a look at paragraphs 10 and 11 of

5    the complaint, which allege that Oceanic Bridge Dalian uses

6    Ocean Bridge to hold the assets of and make payments for and on

7    behalf of Oceanic Bridge Dalian.  We get to the declaration of

8    Mr. Frankie Tang submitted by the plaintiffs here, particularly

9    paragraph 17.  What we find out is that they are alleging just

10   the opposite, that one company isn't paying for the other.  In

11   other words, A isn't paying for B, but B is paying for A.  When

12   you start to scratch the information and belief allegations,

13   they fall apart under the hard evidence that they are now

14   submitting.

15       That's also true of paragraph 8.  At all material

16   times defendant Oceanic Bridge was a wholly-owned dedicated

17   office on information and belief.  Now, we find out, according

18   to their papers, that they knew that it was just an investor.

19   Same thing for paragraph No. 9.  And these are the alterego

20   allegations that I'm driving at, your Honor, acted as partners

21   and/or joint venturers.  There is not a shred of evidence that

22   they have come forward with to support any of that.  That was

23   on information and belief.  When pressed, when put to this

24   motion, there is nothing there.  So the complaint falls apart

25   of its own weight.  There is nothing behind it, your Honor, to

7ACMMEDC

1    support this.

2          What this all stemmed from was an error made on the

3    part of the plaintiffs.  Two companies got together.  There was

4    OB, there was Dalian.  They were dealing with Dalian.  OB was

5    an investor.  They told them that.  What happens then is that

6    the plaintiffs insert a bastardized name, I'll call it, a

7    company that doesn't exist, into the first contract between the

8    parties, charter parties.  They either refused or failed to

9    correct that, although it was brought to their attention.

10          THE COURT:  In e-mails that had the signatory's name

11    over that same bastardized name?

12          MR. SWEENEY:  No, your Honor.  The name that we are

13    talking about was Oceanic Bridge International, Inc., Dalian

14    branch.  That is a nonexistent entity.

15          MR. CRILLEY:  Your Honor, I think you would be looking

16    for Exhibit B to Mr. Lin's reply affidavit.  If the second page

17    produced by the movants is correct, signed best regards,

18    Edward, Oceanic Bridge International, Inc., Dalian branch, he

19    left out the bastardized part of that.

20          THE COURT:  I know that I have seen that on, I

21    believe, one e-mail, the reply.

22          MR. CRILLEY:  Exhibit 4, Exhibit B, second page.

23          THE COURT:  Thank you.  That's what I was looking for.

24    At the end of Exhibit B to the declaration of Edward Lin, which

25    declaration is dated October 3, 2007, the last page, second

7ACMMEDC

1   page of that e-mail which begins:  Please correct charter's

2   name, and it says:  Oceanic Bridge International, Inc., Dalian

3   branch is not exist.  At the very end it says:  Best regards,

4   Edward, and then it says:  Oceanic Bridge International, Inc.,

5   Dalian branch.

6           MR. SWEENEY:  Correct, your Honor.  But the top e-mail

7   in the chain is the later e-mail here and it's a correction.

8   And the correction is being pointed out to the plaintiffs.

9   Again, plaintiffs either refuse, refused, or failed to heed

10  that correction.  They perpetuated it in the charter party.

11  That brings us to these proceedings today.  From there the

12  plaintiffs proceeded to go and attach the proceeds or the funds

13  of the U.S. corporation, which had none of these dealings at

14  all here in this contractual arrangement.

15          So with that, with the allegations that don't hold any

16  water in the complaint, with the mistaken perpetuation of this

17  name that doesn't exist or entity that doesn't exist, I should

18  say, your Honor, we are brought here today on an attachment of

19  a company that had nothing to do with this.  And then as we see

20  in the complaint, the allegations of alterego don't hold water

21  either.

22          I would like to reserve the rest of my time, your

23  Honor, for rebuttal.  Thank you, Mr. Sweeney.  Mr. Crilley.

24          MR. CRILLEY:  Your Honor, the correspondence and the

25  exhibits to the Frankie affidavit and the Jan affidavit show

7ACMMEDC

1    that it was Dalian or the defendants who repeatedly introduced

2    the name Ocean Bridge International, Inc., Dalian branch.  It's

3    not something that the plaintiffs came up with.

4         The plaintiffs at the time of fixing said, who are

5    you?  Who is this company?  We don't know who you are.  In

6    reply to that they get the corporate documents of OB, the

7    California company, presented to them.  Plaintiffs never asked

8    who were your investors.  People don't ask that, your Honor.

9    People ask, who are you?  What's your company?  And again

10   California documents said, we are a California company.  They

11   sign it with the California company's name, with an additional

12   Dalian branch.  They admit there is no such corporation, yet

13   they continue to use it throughout their correspondence.

14        What does that mean, Dalian branch?  We are not sure.

15   But when I go to the Citibank branch in Wantagh, that's the

16   Wantagh branch of Citibank.  I go there, I think I'm dealing

17   with Citibank.  If I go to the Citibank branch in Connecticut,

18   I think I'm dealing with Citibank.  If somebody sends me their

19   corporate documents, when I say, who are you, and they reply,

20   this is who I am, here is my documents, and our head office is

21   in Los Angeles, I think that's who I am dealing with, your

22   Honor.

23        As far as other points raised in the reply briefs

24   saying that, oh, they don't share brick and mortar space, this

25   is the 21st century, your Honor.  Companies, many don't share

7ACMMEDC

1    brick and mortar space, but they market themselves and they

2    hold themselves out to the world as being a formidable company.

3    The fact that we all share the same e-mail domain, that means

4    nothing.  That's like everybody on Yahoo suddenly shares.  I

5    tried this morning, your Honor, to get myself a Yahoo e-mail

6    address.  I could do it in about five minutes.  It's a public

7    domain.  I tried to get myself an Oceanic Bridge e-mail

8    address.  I didn't know how to do that.  That's not a public

9    domain.  That's a private domain.

10         They hold themselves out to the public as one big

11   happy family and you're dealing with them.  You can deal with

12   them, any branch you want, at your convenience, but we are

13   international Oceanic -- Ocean Bridge International

14   Transportation Company.  That's the way they hold themselves

15   out to the world.  That's why the attachment here is correct,

16   your Honor.

17              THE COURT:  Thank you.

18              Mr. Sweeney, anything further?

19              MR. SWEENEY:  Let's just stay with Citibank for a

20   minute.  I'm sure Citibank has a lot of subsidiaries.  And even

21   though they may have one website, I'm sure all of those

22   subsidiaries exist as separate corporations and are entitled,

23   unless otherwise found perpetrating a fraud, something like

24   that, to the respective separate corporate distinctions.  The

25   same applies here.

1          'If you look at the web page, your Honor, there is one

2     web address and all the companies are listed.  But they are

3     listed separately and they are incorporated separately and they

4     are listed as separate corporations and they all have separate

5     addresses, separate telephone numbers, and separate fax

6     numbers.  That's what the law is.  We can't take that law,

7     written rules from the Second Circuit, and just transpose that

8     into some cyberspace rule now because we are all on the

9     internet.

10          As far as what Med-Asia thought, it doesn't turn on

11    what Med-Asia thought.  It turns on whether or not there is

12    actual corporate domination and control as measured by the ten

13    factors which are cited both in plaintiff's papers, in our

14    papers, and in the Second Circuit's decision, and we have

15    addressed all of those in detail, your Honor.  And plaintiff,

16    who has the burden of proof here, really hasn't met any of

17    those factors say for there is one common officer, one common

18    director, and there is 40 percent ownership of Dalian by OB.

19          Under the case law, under the authorities, that's not

20    enough.  That doesn't get them anywhere near an alterego which

21    requires commingled funds, intermingled properties,

22    disrespected corporate formalities and so on.  None of that has

23    been shown in any of the papers, hasn't been shown here, and I

24    haven't heard it here today, your Honor.  Respectfully, we ask

25    that the Court dissolve the attachment and rule in our favor.

7ACMMEDC

1          Thank you, your Honor.

2          MR. CRILLEY:  Your Honor, am I permitted a rebuttal?

3          THE COURT:  No.  Thank you.

4          I thoroughly considered the contents of your papers in

5     principal opposition and reply papers and everything that I

6     have heard here today.  The question on an application to

7     vacate the attachment is whether the plaintiff can prove it has

8     met the requirements of Rule B of the supplemental admiralty

9     rules, not whether the plaintiff can prove its underlying case

10    by way of outweighing contrary evidence or indeed even by

11    presenting at this stage of the litigation a fully developed

12    evidentiary record sufficient to prove each and every element

13    of the underlying claims.

14          The Second Circuit's Aqua Stoli opinion, which is

15    reported at 460 F.3d, 434, 2006 opinion, makes it clear that

16    the requirements for satisfaction of Rule B in addition to the

17    basic filing and service requirements are a demonstration that

18    the plaintiff has a valid prima facie admiralty claim against

19    the defendant, that the defendant cannot be found within the

20    district, that the defendant's property may be found within the

21    district, and that there is no statutory or maritime law bar to

22    the attachment, and this is the burden that must be sustained

23    at the stage of the Rule E(4)(f) challenge.

24          The Court has reviewed carefully the verified

25    complaint here and finds that the complaint contains

7ACMMEDC

1  sufficiently detailed allegations to meet the requirements of
2  Rule B, including the requirement that there be a showing of a
3  valid prima facie claim as against the defendant seeking
4  vacatur of the attachment.  The plaintiff has alleged facts
5  supporting liability of OB in connection with its claims
6  against the Dalian entity by reason of alleged control and/or
7  partnership or joint venture status.  It may well be that the
8  plaintiff is ultimately unable to sustain those claims as a
9  matter of proof when the underlying issues of liability are
10 ultimately litigated.
11         But the requirement at this stage is satisfaction and
12 articulation of the prima facie admiralty claim and the
13 verified complaint is itself sufficient.
14         The plaintiff has also proffered additional evidence
15 that if taken as true would further corroborate the relational
16 allegations or at least aspects of the relational allegations
17 that are made in the complaint.  Therefore, the motion to
18 vacate the attachment is denied.
19         I had adjourned the initial pretrial conference so
20 that we could focus on the motion practice today and so what I
21 would propose to do is to put the initial pretrial conference
22 on for November 2 at 10 in the morning, and that should give
23 you sufficient time to confer and prepare the joint statement
24 and file that a week in advance of the conference, if you are
25 all available on the 2nd of November.

7ACMMEDC

1          MR. SWEENEY:  What day of the week is that, your

2   Honor?

3          THE COURT:  I believe that is a Friday, Friday at 10

4   in the morning.  Are you all available then?

5          MR. SWEENEY:  Yes, defendant is.

6          MR. CRILLEY:  I believe I am available that day as

7   well, your Honor.

8          THE COURT:  So am I.  So that should work out.

9          MR. CRILLEY:  A question I had, your Honor, is the

10  complaint states that the underlying claims, the parties have

11  agreed to arbitrate them in Hong Kong.  Many of the judges in

12  this district are willing to put the matter on a suspense

13  calendar to let the arbitration proceedings go forward rather

14  than to tie up their docket here in New York where we are

15  basically -- I invite Mr. Sweeney to correct me if I'm wrong --

16  we are going to come in and tell you that we are continuing to

17  serve the writ of attachment in search of further security and

18  the matter will be moving forward in arbitration in Hong Kong.

19  It's not contemplated at this time that the merits are going to

20  be heard in this court.

21         THE COURT:  Well, frankly, when that is the situation

22  I normally receive a joint request from the parties that the

23  matter be maintained on the suspense calendar here.  And if

24  that is your joint view today, I can enter an order to that

25  effect and we don't have to come back for the conference.  If

7ACMMEDC

1    you now or after further discussions have different views as to

2    whether there is anything that should appropriately go forward

3    here, you'll need to identify that controversy and the

4    doctrinal basis for it and we will look at it together when we

5    come back for the initial pretrial conference.

6         MR. SWEENEY:  I understand your rulings today

7    completely but I still firmly believe that we don't have an

8    alterego situation here and I just want to explore the

9    possibility of how I bring that to a head here so that we can

10   get the one defendant out of this.  And I don't know that I

11   can, but at least I'd like, before agreeing, just to a joint

12   placing of this matter on the suspense calendar, let me see if

13   I can figure out something.

14        MR. CRILLEY:  Your Honor, at the end of my brief

15   opposition brief I requested to amend the complaint as well.

16   As no one has appeared yet to file an answer to the complaint,

17   I would wonder if I would have the Court's permission to amend

18   the complaint, which would be probably changing one name in the

19   complaint, one paragraph of the complaint.

20        THE COURT:  I didn't address the motion to amend

21   because you phrased it in the alternative and I denied the

22   motion to dismiss.  But as you point out, since there is no

23   answer at this point, you're still an amendment as of right.  I

24   think you are, aren't you?

25        MR. CRILLEY:  I am not sure if the rule says an answer

7ACMMEDC

1   or an appearance.  There has been an appearance, but it has

2   been a limited appearance by its own nature and just for this

3   particular hearing in this particular issue.  If Mr. Sweeney

4   doesn't have an objection to my amending the complaint, I don't

5   think we have to get into whether or not it's of right or not

6   of right.

7            THE COURT:  Mr. Sweeney.

8            MR. SWEENEY:  I'd like to see the proposed amended

9   complaint before answering, your Honor.  I don't know what the

10  amendment is going to entail.

11           MR. CRILLEY:  I can tell you in open court the

12  amendment is going to entail in the first course of action

13  saying that the charter party for the Eleni K was fixed

14  directly with Ocean Bridge International, Inc. rather than with

15  Ocean Bridge International, Inc. Dalian branch, which is the

16  way the complaint reads now and which we all know now is a

17  company that doesn't exist.

18           THE COURT:  That's his proposed amendment.  Again,

19  I'll tell you my mind-set here, it's not a question of whether

20  you can ultimately prove that.  It's a question of whether he

21  is going to be permitted to allege that.

22           MR. SWEENEY:  I understand that, your Honor, and I

23  understand under Rule 15 amendments are freely granted.  With

24  that, I wouldn't have any objection.

25           THE COURT:  Very well then.  You can file that by

7ACMMEDC

1    when?

2         MR. CRILLEY:  How about Monday at 5:00?

3         THE COURT:  I'll give you until Friday.

4         MR. CRILLEY:  This way I can sleep this weekend and

5    watch the Cowboys.

6         THE COURT:  The plaintiffs will file and serve an

7    amended complaint by October 19, 2007.  If it turns out to be

8    wildly different than what was described here on the record, we

9    will deal with that.

10        MR. SWEENEY:  I'll let you know, your Honor.

11        THE COURT:  From this conversation I don't expect it

12   will be.

13        I will enter a brief order just reflecting that for

14   the reasons stated on the record, the motion to dismiss is

15   denied and the motion to vacate the attachment is denied and

16   you'll get that through ECF.

17        Thank you all very much.  Thank you for your

18   arguments.

19                         o0o

20

21

22

23

24

25